IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Progressive Northern Insurance Corporation,<br>　　　　Plaintiff,<br><br>vs.<br><br>Granite Depot of Columbia, LLC, Stepan Stepanovic Grek, Tamara Grigorchuk as Personal Representative for the Estate of Mark Grigorchuk, and Grigoriy Donkoglov<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　CIVIL ACTION NO: 3:26-cv-120-SAL |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Progressive Northern Insurance Corporation, by and through its undersigned counsel, complaining of the Defendants herein, seeks a declaratory judgment from this Honorable Court as set forth below.

## PARTIES AND JURISDICTION

1. This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Federal Rule of Civil Procedure, Rule 57, for the purposes of determining a question of actual controversy between the parties as hereinafter more fully appears.

2. Progressive Northern Insurance Corporation ("Progressive") is a corporation organized under the laws of the State of Wisconsin with its principal place of business in the State of Ohio.

1

5714618.1

3. Defendant Granite Depot of Columbia, LLC ("Granite Depot") is an LLC with its principal place of business in the State of South Carolina. Granite Depot's sole member is Stepan S. Grek ("Grek"). Grek is a citizen and resident of the State of South Carolina. Accordingly, Granite Depot is deemed to be a citizen and resident of the State of South Carolina.

4. Defendant Grek is a citizen and resident of the State of South Carolina.

5. At the time of the underlying accident and at the time of his death, Mark Grigorchuk (the "Decedent") was a citizen and resident of the State of South Carolina, and by virtue of operation of 28 U.S.C. § 1332(c)(2), the Estate of Decedent is deemed to be a citizen and resident of the State of South Carolina.

6. Grigoriy Donkoglov ("Donkoglov") is a citizen and resident of the State of South Carolina.

7. Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332, because the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interests and costs. In further support of the amount in controversy threshold being met, as further outlined below, there are two pending underlying actions involving these parties, one of which is a wrongful death action and the other of which is a personal injury action alleging "serious bodily injury", both of which seek actual and punitive damages.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred insofar as the contract which is the subject of this action, the Progressive Policy, was entered into in Columbia, South Carolina, located in this District. Alternatively, and additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to personal jurisdiction before this Court.

9. The Parties have an actual, present, adverse, and antagonistic interest insofar as Progressive as in doubt with respect to its rights and obligations under a policy of insurance, and by this claim for declaratory relief, seeks a declaration of its rights and obligations under the aforesaid insurance policy with respect to claims asserted by or against the other parties to this action.

10. All proper and antagonistic parties or all parties having any interest in the outcome and adjudication of the present controversy are before the Court.

11. Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure, Rule 57, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to give such relief as it deems necessary under the facts and circumstances presently existing.

**FACTUAL BACKGROUND**

Relation of Parties, Accident, Lawsuits

12. On or about April 27, 2025, Grek was operating a 2021 BMW (VIN WBS33AY06MFK87791) (the "Subject Vehicle") owned by Granite Depot, with Donkoglov and the Decedent as passengers, when he was involved in a single-vehicle motor vehicle accident (the "Accident").

13. Donkoglov allegedly sustained injuries as a result of the Accident.

14. The Decedent allegedly died as a result of the Accident.

15. Donkoglov thereafter filed a personal injury lawsuit alleging damages in relation to the Accident in the Court of Common Pleas, Spartanburg County, with the operative Amended Complaint captioned *Grigoriy Donkoglov v. RRS Holdings LLC d/b/a Main Street Pub, Patel & Company LLC, Rajarshi Patel, Miyako Sushi Group, Inc., and Granite Depot of Columbia LLC*,

Civil Action File No. 2025CP4203127 (the "Donkoglov Lawsuit"). A true and accurate copy of the Amended Complaint from the Donkoglov Lawsuit is attached hereto as **Exhibit A.**

16. The Estate of the Decedent thereafter filed a wrongful death lawsuit in relation to the Accident in the Court of Common Pleas, Spartanburg County, with the operative Complaint captioned *Tamara Grigorchuk as Personal Representative for the Estate of Mark Grigorchuk v. Stepan Stepanovic Grek, Granite Depot of Columbia, LLC, RRS Holdings LLC d/b/a Main Street Pub and Eatery, Patel & Company LLC, Rajarshi Patel, and Miyako Sushi Group, Inc*, Civil Action File No. 2025CP4204522 (the "Estate of Grigorchuk Lawsuit"). A true and accurate copy of the Complaint from the Estate of Grigorchuk Lawsuit is attached hereto as **Exhibit B.**

17. Hereafter, the Donkoglov Lawsuit and the Estate of Grigorchuk Lawsuit will be referred to collectively as "the Underlying Lawsuits".

18. The Underlying Lawsuits each allege that, at the time of the Accident, Grek was operating the Subject Vehicle on behalf of Granite Depot.

## The Progressive Policy

19. At the time of the Accident, Progressive had issued to Granite Depot a commercial auto liability policy, Policy No. 958827090-002, with effective dates of June 20, 2024, to June 20, 2025, and affording auto liability coverage of $1,000,000 Combined Single Limit (the "Progressive Policy").

20. A true and accurate copy of the Progressive Policy with premiums redacted is attached hereto as **Exhibit C**.

21. At the time of the Accident, the only vehicles specifically described on the declarations page to the Progressive Policy were a 2017 Chevrolet Express G3500 (VIN

1HA3GTCG3HN010440) (the "Scheduled Chevrolet") and a 2025 Kia Soul (VIN KNDJ23AU2S7924936 (the "Scheduled Kia") (collectively the "Scheduled Vehicles").

22. At the time of the Accident, the Subject Vehicle was not specifically described on the declarations page to the Progressive Policy.

23. At no point prior to the Accident did Granite Depot, Grek, or any other individual or entity seek to specifically schedule/add the Subject Vehicle to the Progressive Policy.

24. Progressive is in receipt of no information indicating, that as of the date of the Accident, either of the Scheduled Vehicles had been sold or otherwise disposed of by Granite Depot or that either of the Scheduled Vehicles had been withdrawn from normal use due to breakdown, repair, servicing, loss, or destruction.

25. The Subject Vehicle was specifically described on a separate personal auto policy issued by Progressive which maintained the minimum insurance limits required by the South Carolina Motor Vehicles Act for passenger automobiles.

26. The Progressive Policy provides, in relevant part, as follows:

**GENERAL DEFINITIONS**

The words and phrases below, whether in the singular, plural or possessive, have the following special meanings when appearing in boldface type in this policy, and in endorsements issued in connection with this policy, unless specifically modified.

6. "**Insured auto**" or "**your insured auto**" means:
   a. Any **auto** specifically described on the **declarations page**; or
   b. An additional **auto** for Part I—Liability To Others and/or Part II—Damage To Your Auto on the date **you** become the owner if:
      (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;

2

   (ii) **we** insure all **autos** owned by **you** that are used in **your** business;
   (iii) no other insurance policy provides coverage for that **auto**; and
   (iv) **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.

   If **you** add any coverage, increase **your** limits, or make any other changes to this policy during the 30-day period after **you** acquire an additional **auto**, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits, or make such changes for the additional **auto**. **We** may charge premium for the additional **auto** from the date **you** acquire the **auto**.

   With respect to Part I—Liability To Others, if **we** provide coverage for an additionally acquired **auto** in accordance with this paragraph b., **we** will provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **declarations page**.

   With respect to Part II—Damage To Your Auto, if **we** provide coverage for an **auto you** acquire in addition to any **auto** specifically described on the **declarations page**, and the additional **auto** is:
   (i) a **private passenger auto**, **we** will provide the broadest coverage **we** provide for any **auto** shown on the **declarations page**; or
   (ii) any **auto** other than a **private passenger auto**, and **you** have purchased Physical Damage coverage for at least one **auto** other than a **private passenger auto**, **we** will provide the broadest coverage for which the newly acquired **auto** is eligible.

   c. Any replacement **auto** on the date **you** become the owner if:
      (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
      (ii) the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of **your** ownership of the replaced **auto** or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable; and
      (iii) no other insurance policy provides coverage for that **auto**.
   If **we** provide coverage for a replacement **auto**, **we** will provide the same coverage for the replacement **auto** as **we** provide for the replaced **auto**. **We** will provide that coverage for a period of 30 days after **you** become the owner of such replacement **auto**. **We** will not provide any coverage after this 30-day period unless within this period **you** ask **us** to insure the replacement **auto**. If **you** add any coverage, increase **your** limits, or make any other changes to **your** policy during this 30-day period, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits, or make such changes.

6

17. "**Temporary substitute auto**" means any **auto you** do not own while used with the permission of its owner as a temporary substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction. However, **temporary substitute auto** does not include any **auto** available for the regular or frequent use of **you**, a **relative**, or **your employees** unless that **auto** is insured under a separate policy of insurance that provides at least the minimum required limits of financial responsibility under the applicable state and federal laws.

20. "**We**", "**us**" and "**our**" mean the company providing this insurance as shown on the **declarations page**.

21. "**You**", "**your**" and "**yours**" refer to the named insured shown on the **declarations page**.

## PART I—LIABILITY TO OTHERS

### INSURING AGREEMENT—LIABILITY TO OTHERS

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense** for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. However, **we** will only pay for the **covered pollution cost or expense** if the same **accident** also caused **bodily injury** or **property damage** to which this insurance applies.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

### ADDITIONAL DEFINITIONS USED IN THIS PART ONLY

A. When used in Part I—Liability To Others, **insured** means:
   1. **You** with respect to an **insured auto**.

6

5714618.1

2. Any person while using, with **your** permission, and within the scope of that permission, an **insured auto you** own, hire, or borrow except:
   (a) Any person while he or she is working in a business of selling, leasing, repairing, parking, storing, servicing, delivering or testing **autos**, unless that business is **yours** and it was so represented in **your** application.
   (b) Any person while he or she is moving property to or from an **insured auto**, other than one of **your employees**, partners (if you are a partnership), members (if you are a limited liability company), or officers or directors (if you are a corporation).
   (c) The owner or anyone else from whom the **insured auto** is leased, hired, or borrowed. However, this exception does not apply if the **insured auto** is specifically described on the **declarations page**.
   (d) The employees or agents of an owner or anyone else from whom the **insured auto** is leased, hired or borrowed. However, this exception does not apply if the **insured auto** is specifically described on the **declarations page**.
   For purposes of this subsection A.2., an **insured auto you** own includes any **auto** specifically described on the **declarations page**.
3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I—Liability To Others. If **we** make a filing or submit a certificate of insurance on **your** behalf with a regulatory or governmental agency, the term "**insured**" as used in such filing or certificate, and in any related endorsement, refers only to the person or organization named on such filing, certificate or endorsement.

5714618.1

B. When used in Part I—Liability To Others, **insured auto** also includes:
 1. **Trailers** designed primarily for travel on public roads, while connected to **your insured auto** that is a power unit;
 2. **Mobile equipment** while being carried or towed by an **insured auto**;
 3. Any **temporary substitute auto**; and
 4. **Mobile equipment** that is:
    a. owned by **you**;
    b. leased, hired, or borrowed by **you** and **you** have purchased either "Hired Auto Coverage" or "Any Automobile Legal Liability Coverage" from **us**; or
    c. not owned, leased, hired, or borrowed by **you** and **you** have purchased either "Employer's Non-Ownership Liability Coverage" or "Any Automobile Legal Liability Coverage" from **us**.

However, **mobile equipment** meeting any of those three criteria will qualify only if at the time of **loss** it is being:
 a. used in **your** business;
 b. operated on a public highway; and
 c. operated in a state or province where it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law.

**LIMIT OF LIABILITY**

**We** will pay no more than the Limit of Liability shown on the **declarations page** for this coverage for the **insured auto** involved in the **accident** regardless of:
 1. the number of premiums paid;
 2. the number of **insured autos** or trailers shown on the **declarations page**;

13

 3. the number of policies issued by **us**;
 4. the number of vehicles or **insureds** involved in an **accident**; or
 5. the number of claims or lawsuits arising out of an **accident**;

**FOR A FIRST CAUSE OF ACTION**
**(Declaratory Judgment as to Progressive Policy)**

27.  Progressive restates the foregoing allegations of the Complaint not inconsistent herewith and incorporates the same herein by reference.

28.  The Accident did not arise out of the ownership, maintenance, or use of an "insured auto" as defined under the Progressive Policy.

9

5714618.1

29. The Progressive Policy affords no liability insurance coverage for the Accident, including but not limited to those claims alleged in the Underlying Lawsuits, because the Subject Vehicle does not qualify as an "insured auto" under the Progressive Policy insofar as it was not specifically described on the Declarations Page to the Policy at the time of the Accident and does not constitute an additional auto, replacement auto, or temporary substitute auto as those terms are defined under the Progressive Policy.

30. No individual or entity qualifies as an "insured" for liability coverage under the Progressive Policy in relation to the Accident or the claims alleged in the Underlying Lawsuits because the Subject Vehicle does not qualify as an "insured auto" as defined under the Progressive Policy.

31. Progressive has no duty under the Progressive Policy to defend or indemnify any individual or entity against claims arising from or relating to the Accident, including but not limited to those alleged in the Underlying Lawsuits, because the Accident did not arise out of the ownership, maintenance, or use an "insured auto" as defined in the Progressive Policy.

32. Progressive has no duty under the Progressive Policy to defend or indemnify any individual or entity against claims arising from or relating to the Accident, including but not limited to those alleged in the Underlying Lawsuits, because no individual or entity qualifies as an "insured" under the Progressive Policy.

33. For each of the foregoing reasons, Progressive is entitled to an Order holding:

    i. The Progressive Policy does not afford liability coverage for any losses sustained in the Accident, including but not limited to those alleged in the Underlying Lawsuits;

5714618.1

    ii.    Progressive has no duty under the Progressive Policy to defend any individual or entity for claims arising from or relating to the Accident, including but not limited to those alleged in the Underlying Lawsuits;

    iii.    Progressive has no duty under the Progressive Policy to indemnify any individual or entity for claims arising from or relating to the Accident, including but not limited to those alleged in the Underlying Lawsuits;

WHEREFORE, Progressive Northern Insurance Corporation prays that the Court enter judgment in its favor as set forth hereinabove and for such other and further relief as is just and proper.

Respectfully submitted this 9th day of January, 2026.

                                        s/ Robert D. Moseley, Jr.
                                        Robert D. Moseley, Jr. (#5526)
                                        Christopher R. Wray (#13878)
                                        Moseley Marcinak Law Group LLP
                                        PO Box 26148
                                        Greenville, South Carolina 29616
                                        (864) 248-6025 (864) 248-6035 (Fax)
                                        Rob.Moseley@momarlaw.com
                                        Chris.Wray@momarlaw.com
                                        *Attorneys for Progressive Northern Insurance Company*

5714618.1